IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN DOE AND MARY DOE, )
the Natural Parents and Guardians of )
Their Minor Son, R. DOE, )
  )
    Plaintiffs, )
  )
v. ) NO. 3:03-0710
  ) JUDGE HAYNES
CITY OF BRENTWOOD, TENNESSEE, )
A Municipal Corporation; and )
OFFICER ERICA PHILLIPS, Individually, )
  )
    Defendants. )

## MEMORANDUM

Plaintiffs, John Doe and Mary Doe, the natural parents and guardians of their minor son, R. Doe, filed this action under 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Tennessee tort law against the Defendants the City of Brentwood, Tennessee ("Brentwood"), and Officer Erica Phillips of the Brentwood Police Department. This action arises from a traffic stop and resulting citation issued to then-fifteen-year-old R. Doe by Defendant Phillips on August 10, 2002. The gravamen of Plaintiffs' complaint is that R. Doe's constitutional right to privacy was violated when Defendant Phillips erroneously listed R. Doe's age as sixteen (16) on the citation, thereby subjecting him to the jurisdiction of the Brentwood City Court ("City Court"). Plaintiffs also seek injunctive relief preventing Brentwood from prosecuting juvenile traffic offenders in City Court.

In addition, Plaintiffs assert a claim of malicious prosecution against Phillips individually for filing two charges stemming from the traffic stop in the Williamson County Juvenile Court ("Juvenile Court") after the City Court dismissed the charges against R. Doe for lack of jurisdiction based upon his age. This Court conditionally has jurisdiction over this claim under the supplemental

jurisdiction statute, 28 U.S.C. § 1367(c).

Before the Court are several motions. Principal among these are the parties' dispositive motions. In their motion to dismiss and for summary judgment (Docket Entry No. 21), Defendants contend, in sum: (1) that Plaintiffs fail to state a claim upon which relief may be granted against Defendants for violation of R. Doe's constitutional rights under the First and Fourteenth Amendments; (2) that Plaintiffs have failed to prove damages; (3) that Phillips did not violate R. Doe's civil rights under the First and Fourteenth Amendments; (4) that Phillips to summary judgment under the qualified immunity doctrine;(5) that Phillips is entitled to summary judgment on Plaintiffs' malicious prosecution claim; (6) that Brentwood is entitled to summary judgment because Plaintiffs have failed to show that Brentwood violated R. Doe's constitutional rights and Brentwood cannot be held liable for alleged due process violations based on negligent acts; (7) that Plaintiffs have failed to show that Brentwood has a written or unwritten policy, practice or custom of violating the civil rights of juvenile traffic offenders, nor have they shown that Brentwood encourages or allows its police officers to violate the constitutional rights of juvenile traffic offenders; and (8) that Plaintiffs are not entitled to injunctive relief.

In their response (Docket Entry No. 45), Plaintiffs assert: (1) that Tennessee law entitled R. Doe, at the time of his citation, to be subject to the exclusive jurisdiction of the juvenile court system; (2) that Tennessee law similarly entitles R. Doe to a right of privacy in his juvenile traffic offenses, and R. Doe's appearance before the City Court is subject to the Tennessee Public Records Act, in violation of this right to privacy; (3) that Plaintiffs are entitled to mental distress damages arising from their due process and privacy claims; (4) that Plaintiffs are entitled to recover attorneys' fees and lost wages; (5) that Phillips violated Plaintiffs' constitutional rights; (6) that Phillips is not entitled to qualified immunity; (7) that Phillips is liable to Plaintiffs for malicious prosecution; and (8) that issues of material fact exist as to whether Brentwood has a policy or otherwise encourages

2

its police officers to violate the rights of juvenile offenders.

Plaintiffs have filed their own motion for partial summary judgment (Docket Entry No. 26), in which they seek summary judgment on their constitutional claims and claims against Brentwood for the reasons stated in their response to Defendants' motion. In addition, Plaintiffs argue that Defendants' actions violated John Doe's and Mary Doe's constitutional right to raise their child as they see fit.[1] Plaintiffs do not seek summary judgment on their malicious prosecution claim against Phillips.

In their response (Docket Entry No. 42), Defendants assert: (1) that Plaintiffs John Doe's and Mary Doe's Fourteenth Amendment rights are not implicated by the facts of this case; (2) that Plaintiffs have not alleged the violation of a constitutionally-protected right; (3) that Plaintiffs have not shown that a municipal policy or practice was the controlling factor in the actions of Officer Phillips; and (4) Plaintiffs are not entitled to injunctive relief.

In addition to these dispositive motions, also before the Court are motions in limine: (1) Defendants' motion to strike the protective order (Docket Entry No. 53) (under seal); (2) Plaintiffs' motion to exclude evidence of a petition for legal separation (Docket Entry No. 55); (3) Plaintiffs' motion to exclude evidence of other litigation (Docket Entry No. 56); (4) Defendants' motion to exclude statements of an unidentified declarant (Docket Entry No. 61); and (5) Defendants' motion to strike claims not alleged by Plaintiffs in their complaint (Docket Entry No. 62).

For the reasons set forth below, the Court concludes that Plaintiffs' have failed to allege that R. Doe had a constitutionally-protected right to privacy in the proceedings on his juvenile traffic

---

[1] Plaintiffs raise this alleged constitutional violation for the first time in their motion for partial summary judgment and would not have been subject to discovery. This claim, as well as a claim for abuse of process as discussed in the proposed Pretrial Order (under seal) are not properly before the Court and will not be considered in evaluating the parties' motions. Thus, Defendants' motion to strike claims not alleged by Plaintiffs in their complaint (Docket Entry No. 62) will be granted.

3

violations when he appeared before City Court. As a consequence Plaintiffs are unable to maintain an action under 42 U.S.C. § 1983. Further, the Court concludes that Plaintiffs have failed to assert a "colorable" federal claim, and the Court declines jurisdiction over Plaintiffs' state law claims. Accordingly, the Defendants' motion for summary judgment should be granted and this case should be dismissed..

## A. FINDINGS OF FACT[2]

On August 10, 2002, fifteen-year-old R. Doe was riding his motorcycle down Sunset Road in Brentwood, Tennessee. (Docket Entry No. 43, Defendants' Response to Plaintiffs' Statement of Undisputed Facts at ¶¶ 1-2; Docket Entry No. 37, Plaintiffs' Response to Defendants' Statement of Undisputed Facts at ¶ 1). R. Doe was operating his motorcycle pursuant to a PDPM- or PM-class license, issued on January 23, 2002. (Docket Entry No. 39, Tim Stringfield Affidavit, Attachment thereto, Tim Stringfield Letter Aug. 16, 2002 (utilizing interchangeably the terms "PDPM" and "PM")). Under the terms of this license, persons under the age of sixteen (16) are allowed to operate a motorcycle, but such a person "must be limited to a 650cc maximum [sized motorcycle]; must not carry passengers; must be restricted from use of interstate systems; [must limit operation to] daylight hours only; [and is] limited to a twenty mile radius of the driver's home."[3] Id.; Docket Entry No.

---

[2] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986), app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because there are no material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

[3] Plaintiffs contend that R. Doe was operating under a limited M-class license, which allows persons between the ages of fourteen (14) and sixteen (16) to operate a "motor-driven cycle" between 4:00 a.m. and 8:00 p.m. See Docket Entry No. 37 at ¶ 2; Docket Entry No. 41, attachment thereto at iii. R. Doe was issued this limited M license on January 17, 2001. (Docket Entry No. 39, Tim Stringfield Affidavit, Attachment thereto, Tim Stringfield Letter Aug. 16,

4

41, Plaintiffs' Notice of Filing, attachment thereto, Tenn. Dep't of Safety Motorcycle Operator Manual 2003 at iii-iv.

On that day, Phillips was on-duty for the Brentwood Police Department, and was accompanied by Officer Jeff Moorehead, a Brentwood field training officer. (Docket Entry No. 37 at ¶¶ 5-6). Shortly before 7:56 p.m., Phillips was traveling southbound on Sunset Road, and her radar detector calculated that R. Doe was traveling at a rate of sixty-three (63) miles per hour in a forty mile per hour zone. Id. at ¶¶ 7 and 20; Docket Entry No. 43 at ¶ 5. Upon this detection, Phillips initiated a traffic stop of R. Doe at 7:56 p.m. for traveling in excess of the posted speed limit. (Docket Entry No. 37 at ¶¶ 11, 16). In her deposition, Phillips testified that probable cause existed for her stop of R. Doe because of his speeding. Id. at ¶ 12. In any event, R. Doe admits that he was likely traveling over sixty (60) miles per hour prior to the stop. (Docket Entry No. 37 at ¶ 18).

After initiating the traffic stop, Phillips approached R. Doe. The parties dispute the amount of natural light at the time of the stop. Phillips and Moorehead contend that it was dark outside, that passing traffic utilized headlights, and that Phillips utilized a spotlight to illuminate the area. Id. at

---

2002). A "motorcycle", which is defined as "every motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three (3) wheels in contact with the ground, including a vehicle that is fully enclosed, has three (3) wheels in contact with the ground, weighs less than one thousand five hundred pounds (1,500 lbs.), and has the capacity to maintain posted highway speed limits, excluding a tractor or motorized bicycle[,]" Tenn. Code Ann. § 55-8-101(32), is different from a "motor-driven cycle", defined as "every motorcycle, including every motor scooter, with a motor which produces not to exceed five (5) brake horsepower, or with a motor cylinder capacity not exceeding one hundred twenty-five cubic centimeters (125cc) . . . ." Tenn. Code Ann. § 55-8-101(33).

The parties do not dispute that on August 10, 2002, R. Doe was riding a "motorcycle", see Docket Entry No. 37 at ¶ 1, and there is no evidence on the record suggesting that R. Doe's motorcycle could be classified as a "motor-driven cycle". As a consequence, the Court concludes that on August 10, 2002, R. Doe was subject to the requirements, restrictions, and limitations of his PM license.

5

¶¶ 14-15. According to R. Doe, however, was still daylight at the time of the stop. Id. at Responses to ¶¶ 14-15; Docket Entry No. 43 at ¶ 5. The official sundown according to the U.S. Naval Academy on this date was 7:43 p.m. (Docket Entry No. 37 at ¶ 3).

Shortly after the traffic stop, Phillips inspected R. Doe's PDPM permit. Id. at ¶ 19. Given the permit's restrictions, Phillips issued R. Doe a citation for violating the provision of his permit limiting operation to daylight hours. Id. at ¶¶ 19, 22. Moorehead advised Phillips that she had the option to cite R. Doe or administer a verbal warning for both the permit violation and speeding, and Phillips testified that "[a]s long [an officer is] within [her] legal limits, it's [in her] discretion" whether to issue warnings or citations. Id. at ¶¶ 23, 27. Phillips exercised this option by issuing a citation to R. Doe for only the permit violation, and claimed she did so "to give R. Doe a break by not charging him with two violations." Id. at ¶¶ 22, 29.

R. Doe's permit correctly lists R. Doe's date of birth as December 23, 1986. Id. at ¶ 20. However, Phillips listed on the citation R. Doe's age as sixteen. Id. at ¶ 30; Docket Entry No. 43 at ¶ 9. Phillips contends she simply miscalculated R. Doe's age as listed on his license, but R. Doe counters that he advised Phillips that he was fifteen. (Docket Entry No. 37 at ¶ 30; Docket Entry No. 43 at ¶ 8). Because Phillips's citation listed R. Doe as sixteen, she issued to R. Doe a summons to appear in the City Court as opposed to the Juvenile Court on August 20, 2002.[4] (Docket Entry No. 37 at ¶ 32). R. Doe signed the summons without reading it or verifying the information, but

---

[4] Under Tennessee law, the juvenile courts have exclusive original jurisdiction over "proceedings in which [a] child is alleged . . . to have committed a juvenile traffic offense." Tenn. Code Ann. § 37-1-103(a)(1). However, "[i]n any case or class of cases the judge of any juvenile court may waive jurisdiction of traffic offenders who are sixteen (16) years of age or older, and such cases shall be heard by the court or courts having jurisdiction of adult traffic violations . . . ." Tenn. Code Ann. § 37-1-146(c). In 1985, Judge Jane Franks entered a decree waiving the original exclusive jurisdiction of the Williamson County Juvenile Court for juvenile traffic offenders sixteen (16) years of age or older. See Docket Entry No. 37 at ¶ 34. As a consequence, the Brentwood City Court retains jurisdiction over juvenile traffic offenders aged sixteen years or older.

6

claims that he did not so because he has a reading disability and had Phillips explain to him the information contained in the summons. Id. at ¶ 36; Docket Entry No. 30, Plaintiffs' Appendix, Jeff Moorehead Deposition, Exhibit 5 attached thereto, Summons. Phillips listed on the summons a time of 8:01 p.m., and Phillips's daily activity report for August 10, 2002 indicates that the stop concluded at 8:10 p.m. (Docket Entry No. 37 at ¶ 24).

Plaintiffs claim that John Doe, R. Doe's father, called the Brentwood City Judge to question the City Court's jurisdiction over R. Doe's citation given his age. (Docket Entry No. 43 at ¶ 11). Plaintiffs claim that the City Judge told John Doe that all juvenile traffic offenders to go City Court and it had been done that way for thirty-five years. Id. The City Judge denies having any such conversation with any of the Plaintiffs. Id.

John Doe received a letter from Phillips advising him that R. Doe's hearing was continued until August 29, 2002, and that a parent must accompany R. Doe to the City Court. (Docket Entry No. 30, Mary Doe Deposition, Exhibit 4 attached thereto, Erica Phillips Letter Aug. 14, 2002). Mary Doe and R. Doe appeared in the City Court with retained counsel on August 29, 2002. (Docket Entry No. 43 at ¶ 14). During the proceeding, the City Court Judge called all of the juvenile drivers to stand before him as a group. Id. at ¶ 15. R. Doe stated his name in open court. Id. at Response to ¶ 15 (citing R. Doe Deposition at 84). R. Doe's counsel argued that the City Court lacked jurisdiction over R. Doe because of his age. Id. at ¶ 16; Docket Entry No. 37 at ¶ 39. Upon hearing R. Doe's counsel's argument, the City Judge dismissed the traffic violation citation in his court. (Docket Entry No. 37 at ¶ 40). According to Plaintiffs, the City Judge did so only after telling R. Doe's counsel that her argument was "ridiculous" and that he has heard matters involving juvenile traffic offenders for thirty-five years. (Docket Entry No. 17 at ¶ 17). Plaintiffs also contend that after the dismissal, a uniformed Brentwood police officer "confronted" Mary Doe, R. Doe, and R. Doe's counsel and "pointed his finger at them and declared in a heated tone of voice: 'I don't

7

know why you're doing this because now we are going to file two petitions for speeding and for [the] driver's license restriction.' " Id. at ¶ 18.

After the City Court citation was dismissed, Phillips went before a magistrate for entry of petitions against R. Doe in the Juvenile Court for both speeding and a violation of the daylight restriction of R. Doe's permit. (Docket Entry No. 37 at ¶ 42). According to Brentwood Police Chief Ricky Watson, the Williamson County Juvenile Judge has a policy of "hear[ing] petitions for any charges which would 'imply what the probable cause for the stop is.'" and that is why Phillips swore out petitions for both of R. Doe's alleged defenses. (Docket Entry No. 43 at Response to ¶ 20 (citing Chief Ricky Watson Deposition at 66-68)).

On November 13, 2002, R. Doe appeared before the Juvenile Court for a hearing on his two alleged August 10, 2002 violations cited by Phillips, as well as three other traffic violations cited by the Williamson County Sheriff's Department and the Franklin Police Department. (Docket Entry No. 37 at ¶¶ 43-44). At this hearing, the Juvenile Court referee dismissed both of R. Doe's August 10, 2002 traffic violation citations. Id. at ¶ 48.

According to Phillips, she was aware at the time of R. Doe's traffic stop, she was aware that the Juvenile Court had exclusive original jurisdiction over juvenile traffic offenders under the age of sixteen. Id. at ¶ 28. Plaintiffs dispute Phillips's awareness as of August 10, 2002, and contend that Brentwood Police Department's General Order No. 4-25, Section III.F., which addresses the factors a police officer should consider in determining whether a juvenile offender should be diverted to juvenile courts, violates Tennessee law by "requir[ing] juvenile traffic offenders be cited to appear in Brentwood City Court and makes no distinction for juveniles under the age of sixteen . . . ." (Docket Entry No. 43 at ¶ 21). In response, Defendants contend that this General Order does not contravene Tennessee law, and that all Brentwood police officers are instructed that juvenile traffic offenders under sixteen are to be cited into Juvenile Court. Id. at Response to ¶ 21.

8

## B. CONCLUSIONS OF LAW

### 1. Standard of Review

Although Defendants have moved the Court to dismiss the complaint or for summary judgment, the Court will analyze the parties' dispositive motions under summary judgment standards given the evidence on the record beyond the complaint itself. See Sims v. Mercy Hosp. of Monroe, 451 F.2d 171, 173 (6th Cir. 1971).

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis added in part). Earlier the Supreme Court defined a material fact for

9

Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
>           \*   \*   \*
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

11

Liberty Lobby, 477 U.S. at 248 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and

12

other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'
>
> 6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed

13

upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 2. Section 1983 and Qualified Immunity

The provisions of Section 1983 are as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

To state a claim under Section 1983, there must be a violation of a <u>specific</u> constitutional right. Wood v. Strickland, 420 U.S. 308 (1975). As the Supreme Court emphasized, Section 1983 "was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion [of state officials] which do not rise to the level of violations of <u>specific constitutional guarantees.</u>" Id. at 326 (emphasis added). The Court of Appeals has stated that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere." Braley v. City of Pontiac, 906 F.2d 220, 223 (6th Cir. 1990).

The Supreme Court has stated the basic elements for a § 1983 claim as follows:

> [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was

14

> committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.

Parratt v. Taylor, 451 U.S. 527, 535 (1981). It follows, therefore, that a failure to assert a claim of a specific constitutional violation amounts to a failure to assert a claim under § 1983.

Although the federal supplemental jurisdiction statute gives the district court discretion to "decline supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[,]" 28 U.S.C. § 1367(c), the Sixth Circuit has consistently held that "pendent jurisdiction may be exercised only where federal jurisdiction is properly based on a colorable federal claim." Lopez-Flores v. Gen. Motors Corp., 968 F.2d 1215, 1992 WL 146651, at *2 (6th Cir. June 26, 1992) (citing Wal-Juice Bar, Inc. v. Aleut, 899 F.2d 1502, 1504-05 (6th Cir. 1990)). Thus, if the Court does not find a colorable claim under § 1983 or another federal law, then the Court lacks jurisdiction over pendent state law claims and is required to dismiss the action. See e.g., Wal-Juice Bar, Inc. v. Aleut, 899 F.2d 1502, 1504-05 (6th Cir. 1990).

The Constitution does not explicitly mention a right of privacy. However, the Supreme Court has held that "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them live and substance[, and these v]arious guarantees create zones of privacy." Griswold v. Connecticut, 381 U.S. 479, 484 (1965) (internal citation omitted). The Supreme Court later held that the "right to privacy" is founded in the Fourteenth Amendment's concept of personal liberty, Roe v. Wade, 410 U.S. 113, 152-53 (1973), and encompasses both "individual interest in avoiding disclosure of personal matters, and . . . the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600 (1977) (footnotes omitted); accord Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 457 (1977). The protections afforded under this right to privacy, however, "must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty.' " Paul v. Davis, 424 U.S. 693, 713

15

(1976) (citing Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

The Sixth Circuit interprets Whalen's and Nixon's "right of nondisclosure" narrowly. J.P. v. DeSanti, 653 F.2d 1080, 1090 (6th Cir. 1981). In DeSanti, juveniles who had been convicted of a crime challenged the release of personal information to governmental, social, and religious agencies. Id. at 1082. The Sixth Circuit rejected their claim, observing that "the fact that the Constitution protects several specific aspects of individual privacy does not mean that it protects all aspects of individual privacy. Nor is there any indication in any [Supreme Court privacy decisions] of a constitutional right to nondisclosure of juvenile court records." Id. at 1088.

In DeSanti, the Sixth Circuit analogized the plaintiffs' claims to those at issue before the Supreme Court in Paul, in which the plaintiff claimed that circulation to merchants by police of his shoplifting arrest violated his constitutional right to privacy. Id. (discussing Paul). In Paul, the Supreme Court recognized that "zones of privacy may be created by more specific constitutional guarantees [but] personal rights found in [the] guarantee of personal privacy must be limited to those which are 'fundamental; or 'implicit in the concept of ordered liberty' . . . .Respondent's claim is far afield from [the privacy] line of decisions." Paul, 424 U.S. at 712-13 (cited and quoted in DeSanti, 653 F.2d at 1088).

In reaching its decision, the Sixth Circuit held that Whalen and Nixon neither created a "general right to nondisclosure" nor overrule Paul's "fundamentality" and "implicitness in the concept of ordered liberty" requirements. Id. at 1089. The Sixth Circuit observed that in Whalen, the Supreme Court refused to address whether there exists a general "constitutional right to have information kept private", and that similarly in Nixon, in analysis based upon the Fourth Amendment, "[t]he [Supreme] Court did not purport to establish a constitutional right to nondisclosure." Id. at 1089 (citing Whalen, 429 U.S. at 605-06; Nixon, 433 U.S. at 455-65). Moreover, in each opinion, Justice Stewart separately noted "that the Court was not establishing a

16

general right to nondisclosure of private information." Id. (citing Whalen, 429 U.S. at 608-09 (Stewart, J., concurring); Nixon, 433 U.S. at 455 n.18).

Thus, the Sixth Circuit interpreted Whalen and Nixon narrowly and in light of Paul, and held: Absent a clear indication from the Supreme Court we will not construe isolated statements in Whalen and Nixon more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure. . . . [W]e conclude that the Constitution does not encompass a general right to nondisclosure of private information. We agree with those courts that have restricted the right to privacy to its boundaries as established in Paul . . . and Roe . . . those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.' " Id. at 1089-90.

The Sixth Circuit explained that its holding should not be construed to reject the existence of a right to "informational privacy":

> Our opinion does not mean that we attach little significance to the right of privacy, or that there is no constitutional right to nondisclosure of private information. . . . Our opinion simply holds that not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy. As with the disclosure in Paul v. Davis, protection of [one's] privacy rights . . . must be left to the states or the legislative process.

Id. at 1090-91. In fact, since DeSanti, the Sixth Circuit has found that the dissemination of private information may implicate a constitutional right to privacy. See, e.g., Bloch v. Ribar, 156 F.3d 673, 686 (6th Cir. 1998); Kallstrom v. City of Columbus, 136 F.3d 1055, 1062 (6th Cir. 1998).

Thus, in order to determine whether a plaintiff has suffered a constitutional privacy violation, a court must analyze whether: "(1) the interest at stake . . . implicate[s] either a fundamental right or one implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information [is] balanced against the individual's interest in keeping the information private. Bloch v. Ribar, 156 F.3d 673, 684 (6th Cir. 1998) (citing DeSanti, 653 F.2d at 1090-91).

17

Here, Plaintiffs' claims focus on the fact that fifteen-year-old R. Doe was subject to open court proceedings in the Brentwood City Court for his traffic violations, where he disclosed his name and the record of proceedings became part of the public record, rather than being brought before the Williamson County Juvenile Court, where his identity and record would remain confidential. The Court's threshold inquiry is whether R. Doe's interest in keeping his traffic violations confidential implicates either a right that is "fundamental" or "implicit in the concept of ordered liberty." DeSanti, 653 F.2d at 1090. In DeSanti, the Sixth Circuit unequivocally held that there exists no "constitutional right to nondisclosure of juvenile court records." Id. at 1088.

Plaintiffs argue that DeSanti is inapposite to this action because Tennessee law creates in R. Doe a constitutional right to privacy and "due process interests within the scope of the Due Process Clause of the Fourteenth Amendment." (Docket Entry No. 45, Plaintiffs' Response to Defendants' Motion to Dismiss and Summary Judgment at 7). To be sure, DeSanti held that the "protection of [one's] privacy rights . . . must be left to the states or the legislative process." Id. at 1091. However, the protections afforded under state statutes alone offer no probative evidence of a constitutionally-created right forming the basis of a claim under Section 1983.

Nevertheless, Tennessee law does not evince a right of confidentiality in juvenile traffic violations. Under Tennessee law, "[t]he juvenile court has exclusive original jurisdiction of . . . [p]roceedings in which the child [under the age of sixteen] is alleged . . . to have committed a juvenile traffic offense as defined in § 37-1-146." Tenn. Code Ann. §§ 37-1-103(a)(1); 37-1-146(c). A juvenile court may not exclude the general public from hearings for juvenile traffic offenses. Tenn Code Ann. § 37-1-124(d). Further, Tennessee law prevents the public dissemination of "all files and records" in a juvenile court proceeding "except in cases arising under § 37-1-146 . . . ." Tenn. Code Ann. § 37-1-153(a) (emphasis added). Thus, Tennessee law demonstrates that even assuming R. Doe was only required to appear before the Juvenile Court, as Plaintiffs claim he was

18

entitled, he would not have been afforded even statutory protection against disclosure and an open proceeding.

As to Plaintiffs' procedural due process claims, the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. In evaluating a procedural due process claim under Section 1983, the Sixth Circuit requires that courts undertake a two-part analysis: "First, the court must determine whether the interest at state is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right [should a court] continue to consider whether the deprivation of that interest contravened notions of due process." Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002) (citing, among others, Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972)); see also Ferencz v. Hairston, 119 F.3d 1244, 1247 (6th Cir. 1997); Tony L. v. Childers, 71 F.3d 1182, 1185 (6th Cir. 1995).

Given the Court's conclusion that R. Doe did not have a constitutionally-protected right to the privacy of his juvenile traffic offenses, Plaintiffs' procedural due process claim must fail.

Even if such rights to privacy and due process were found sufficient to recover damages against Phillips, Plaintiffs would have to cite to a clearly established decision of the Supreme Court, the Sixth Circuit or this Court to recover. Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177-78 (6th Cir. 1988). Plaintiffs have failed to do so. Moreover, although qualified immunity does not apply to Brentwood, Plaintiffs' citation of Brentwood Police Department's General Order No. 4-25, Section III.F does not demonstrate proof of a policy, practice or custom to support a judgment against Brentwood for monetary damages or injunctive relief.

Accordingly, the Court concludes that R. Doe's interest in appearing in keeping his alleged traffic violations, if any, is neither "fundamental" nor "implicit in the concept of ordered liberty" under the Constitution. As a consequence, Plaintiffs are unable to establish a procedural due process

19

violation. Because Plaintiffs' have thus failed to assert a claim of specific constitutional violations, their action under Section 1983 cannot be maintained and must be dismissed. Given the Court's conclusion on Plaintiffs' Section 1983 claims, the Court declines jurisdiction over Plaintiffs' state law claim of malicious prosecution. Wal-Juice Bar, Inc. v. Aleut, 899 F.2d 1502, 1504-05 (6th Cir. 1990).

## C. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs' motion for partial summary judgment (Docket Entry No. 26) should be denied, Defendants' motion to dismiss and for summary judgment (Docket Entry No. 21) should be granted. In addition, Defendants' motion to strike claims not alleged by Plaintiffs in their complaint (Docket Entry No. 62) should be granted. All other outstanding motions (Docket Entry Nos. 53, 55, 56 and 61) should be denied as moot.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of August, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge